# 2009 DTA 86

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

IVÁN OTERO RÍOS
Recurrente

v.

POLICÍA DE PUERTO RICO
Recurrida

Núm. KLRA-2007-01352

San Juan, Puerto Rico, a 29 de mayo de 2009

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y Morales Rodríguez

Bajandas Vélez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos el Sr. Iván Otero Ríos (Sr. Otero Ríos o el recurrente) mediante el recurso de epígrafe. Nos solicita que revoquemos la Resolución emitida por la Policía de Puerto Rico (la Policía o la recurrida) el 9 de octubre de 2007 y notificada al día siguiente. Por medio de tal dictamen, la Policía revocó la licencia de armas número 12448 expedida a nombre del recurrente por entender que éste tenía un historial de violencia, hace uso excesivo de bebidas embriagantes y no cumple con la Ley 86 de Sustento de Menores.

Analizado el recurso y el derecho aplicable, resolvemos confirmar resolución recurrida.

### I

El 3 de abril de 2007, notificada el 20 de abril de 2007, el Sr. José G. Marrero Ruiz, Superintendente Auxiliar de Servicios al Ciudadano de la Policía, le dirigió una comunicación escrita al recurrente en la que le informó lo siguiente: "**le revoco** la licencia de Armas **12448**, debido a que usted tiene un historial de violencia, hace uso excesivo de bebidas embriagantes y no cumple con la Ley 86 de Sustento de Menores. **Deberá de entregar el arma de fuego y la licencia a la Policía de Puerto Rico inmediatamente**". [1] (Destacado en el original). Allí le advirtió de su derecho a solicitar una vista administrativa.

En respuesta, el 30 de abril de 2007, el Sr. Otero Ríos presentó una Solicitud de Vista Administrativa en la que alegó no estar de acuerdo con la revocación y diferir totalmente de las razones que se utilizaron para revocar la licencia. También solicitó que se consolidara cualquier otra vista que estuviere pendiente. [2]

El 30 de julio de 2007, se llevó a cabo la vista administrativa ante el oficial examinador designado. El Sr. Otero Ríos no presentó prueba documental o testifical alguna. Así las cosas, el 28 de agosto de 2007, se emitió el Informe del Oficial Examinador. [3]

El 9 de octubre de 2007, archivada en autos al día siguiente, la Policía emitió la Resolución recurrida en la que ordenó la revocación de la licencia de armas del Sr. Otero Ríos. La Resolución hizo las siguientes determinaciones de hechos:

"El Superintendente de la Policía de Puerto Rico le notificó al peticionario de epígrafe la intención de revocarle la Licencia de Armas 12448 de conformidad con la Ley Núm. 404 de 11 de septiembre de 2000, Ley de Armas de Puerto Rico, según enmendada, y bajo el fundamento de que [en] la investigación realizada resultó que tiene un historial de violencia, hace uso excesivo de bebidas embriagantes y no cumple con la Ley de Sustento de Menores."

Surge que al peticionario se le realizó una investigación relacionada con su conducta moral y reputación, de información suministrada al Agente Julio Torres Martínez, [placa número] 18248, adscrito a la División de Licencias y Permisos de Seguridad Privada.

El agente entrevistó ocho (8) personas que visitaron dicha Oficina para suministrar información relacionada con el carácter violento demostrado por el peticionario.

La versión de la Srta. María Rivera Quiñones, Analista de la División de Registro de Armas, es en [sic] base a la información suministrada en el expediente la cual resultó desfavorable al peticionario. Que toman la decisión de no otorgar el privilegio por las versiones vertida por los ciudadanos. Así nos hemos convencido.

A base de tales hechos, la recurrida concluyó que el recurrente violó el Artículo 2.11 de la Ley de Armas que dispone que no se expedirá licencia de armas, y de haberse expedido, se revocará, a cualquier persona que se encuentre acusado o pendiente o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.11, que sea un ebrio habitual, que esté bajo una orden del Tribunal que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, alguno de los niños de ese compañero o a persona alguna y que tenga un historial de violencia.

Inconforme, el 29 de octubre de 2007, el Sr. Otero Ríos presentó una Moción de Reconsideración. Alegó que durante la vista administrativa no se presentó evidencia creíble de que el peticionario tuviera un historial de violencia, que hace uso excesivo de bebidas embriagantes y que no cumple con la ley de sustento de menores. [4] Arguyó que la determinación de la Policía se fundamentó en comentarios de testigos que tienen una actitud hostil en su contra por razones laborales, quienes declararon con la intención de perjudicarlo.

La Policía no consideró la Moción de Reconsideración dentro del término dispuesto por ley, por lo que el 12 de diciembre de 2007, el Sr. Otero Ríos presentó el recurso de epígrafe. Señaló que:

"La Policía de Puerto Rico cometió un grave de [sic] error de derecho al revocar la licencia de armas del recurrente sin presentar testigos con conocimiento directo y personal, que pudiera[n] ser contrainterrogados sobre el particular, limitándose a presentar el testimonio de un entrevistador que no corroboró la información recibida y una analista que dependió de la evaluación de la investigación precedente, en violación al debido procedimiento de ley."

El 27 de febrero de 2008, la Procuradora General presentó su alegato de oposición en el cual reconoció que no existe evidencia en el expediente administrativo para sostener la conclusión de la Policía en cuanto al hecho de que el recurrente incumplió con la Ley de Sustento de Menores. A pesar de ello, planteó que la determinación de la Policía debe sostenerse porque en el expediente administrativo existe evidencia sustancial que confirma que el Sr. Otero Ríos tiene un historial de violencia y consume alcohol de manera excesiva. Arguyó que estas razones lo descalifican para continuar poseyendo una licencia de armas en virtud de lo dispuesto por el Artículo 2.02 (a) (3) y (7) de la Ley de Armas de Puerto Rico.

La Procuradora General alega, además, que no era necesario que el agente investigador tuviera conocimiento personal y directo de los incidentes violentos protagonizados por el Sr. Otero Ríos. Sostiene que el informe de investigación no se trata de prueba de referencia inadmisible porque es un informe de un acto preparado por un empleado público dentro del ámbito de su deber ministerial. Explica que este tipo de informe es admisible como excepción a la regla de prueba de referencia. *Véase*, Regla 65 (h), 32 L.P.R.A. Ap. IV, R. 65 (h). Por último, arguye que el Sr. Otero Ríos no demostró fehacientemente la existencia de otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto que no se pueda concluir que la determinación de la agencia fue razonable, a la luz de la totalidad de la prueba que el oficial examinador tuvo ante sí al momento de emitir la determinación recurrida.

De conformidad con la Regla 83.1 de nuestro Reglamento, el 10 de julio de 2008 ordenamos a la Policía de Puerto Rico por conducto de la Oficina de la Procuradora General que emitiera una Resolución enmendada en la que especificara y detallara los fundamentos utilizados para sustentar la revocación de la licencia del Sr. Otero Ríos.

El 13 de agosto de 2008, la Policía presentó la Resolución enmendada en la cual hizo las siguientes determinaciones de hechos.

"(1) El peticionario, el Sr. Iván Otero Ríos, es propietario de la Agencia de Seguridad American Detective and Security Services, Inc.

(2) Dado que estaban vencidos varios documentos relacionados con la licencia que autoriza la operación de esa agencia de seguridad, la División de Detectives Privados de la Policía de Puerto Rico comenzó una investigación al respecto. Varias quejas fueron recibidas contra el peticionario durante el curso de la investigación, especialmente de empleados de la agencia que reclamaban no haber cobrado su sueldo. Una de las quejas más frecuentes apuntaba hacia el alegado carácter violento, agresivo y amenazante del Sr. Otero Ríos, el que, supuestamente, se exacerbaba cuando tomaba bebidas embriagantes, lo que se señalaba éste hacia con frecuencia durante horas laborales. También surgieron quejas de los empleados en cuanto a que el péticionario los intimidaba mostrándoles armas de fuego cuando se enfrentaba a situaciones de conflicto.

(3) A la división de Detectives Privados también llegó información de que el peticionario fue arrestado por no pagar pensión alimentaria, y que incluso, fue puesto en prisión por ello.

(4) Se asignó al Agente Julio Torres Martínez, placa núm. 18248, agente investigador de la Policía, para realizar una investigación confidencial sobre las alegaciones antes reseñadas.

(5) El 16 de marzo de 2007, el Agente Torres Martínez rindió su informe de investigación con resultados desfavorables para el peticionario. Dicho informe obra en el expediente administrativo.

(6) Del expediente surge que el Agte Torres Martínez, a través de diez (10) entrevistas realizadas a empleados y conocidos del peticionario, corroboró, entre otras cosas, el carácter violento, impulsivo y agresivo del mismo y que, además, éste tenía la costumbre de mostrar sus armas de manera ostentosa para intimidar a otras personas, especialmente a empleados y clientes.

(7) Ocho (8) de los diez entrevistados reseñaron incidentes de violencia y agresividad protagonizados por el Sr. Otero Ríos; seis (6) de los entrevistados señalaron que éste consume bebidas alcohólicas con frecuencia; y cuatro (4) relataron que fueron intimidados con un arma de fuego por el peticionario. Los informes de dichas entrevistas obran en el expediente administrativo.

(8) De las entrevistas realizadas se desprende que el peticionario es una persona agresiva, que frecuentemente ingiere bebidas alcohólicas e intimida y amenaza a sus empleados con sus armas de fuego, colocándolas de manera visible cuando surgen situaciones conflictivas.

(9) También obra en el expediente administrativo la copia de una orden de protección expedida contra el peticionario por el Tribunal de Primera Instancia el 12 de julio de 2007 al amparo de la Ley Contra el Acecho. Dicha orden fue emitida a favor de un grupo de miembros de la junta de residentes de la urbanización El Plantío, ubicada en ele Municipio de Toa Baja. El peticionario fue contratado para que su compañía ofreciera servicios de seguridad a esa urbanización. La orden fue solicitada y expedida a petición de los miembros de la Junta, ya que el Sr. Otero Ríos incurrió en un patrón de insultos y amenazas contra dichos clientes, ocasionándoles temor por su seguridad. De la referida orden de protección también se desprende que ocurrió un incidente violento en el mismo tribunal que la expidió. Esa orden de protección por acecho constituye evidencia adicional sobre el carácter violento y agresivo del peticionario.

(10) De las entrevistas realizadas por el Agte. Torres Martínez, se desprende que el peticionario es una persona impulsiva y agresiva y que no merece el privilegio de tener una Licencia de Armas.

(11) La Sra. María Rivera, Analista de la División de Registro de Armas, evaluó el informe realizado por el Agte. Torres Martínez y recomendó revocar la licencia de armas emitida a favor del peticionario, ya que éste no cumple con los requisitos para retenerla."

El Sr. Otero Ríos solicitó la regrabación de la vista administrativa el 27 de agosto de 2008. A consecuencia de algunos trámites azarosos, no fue hasta el 26 de noviembre de 2008 que la Policía le entregó la regrabación.

El 17 de diciembre de 2008, el Sr. Otero Ríos presentó su alegato suplementario sobre la prueba. El 6 de febrero de 2009 la Procuradora General presentó la réplica al alegato suplementario. No obstante, el Sr. Otero Ríos no sometió la transcripción de la vista administrativa y nos solicitó que escucháramos la regrabación para que evaluáramos la apreciación de la prueba hecha por el Oficial Examinador.

El 31 de marzo de 2009, ordenamos al Sr. Otero Ríos que sometiera la transcripción de la vista administrativa, o bien que preparara una exposición narrativa de la prueba estipulada según establece nuestro Reglamento en un plazo de treinta días.

Finalmente, el 29 de abril de 2009, el Sr. Otero Ríos presentó ante nuestra consideración la transcripción de la vista administrativa. El 12 de mayo de 2009 compareció la Procuradora General para estipular la transcripción de la vista, sin realizar ninguna enmienda.

Con el beneficio de la comparecencia de ambas partes y habiendo leído cuidadosamente la transcripción de la vista administrativa, resolvemos.

## II

### A

Como cuestión de umbral, reafirmamos el principio de que a toda determinación administrativa le cobija una presunción de regularidad y corrección. Tal y como lo ha interpretado el Tribunal Supremo de Puerto Rico en numerosas ocasiones, la revisión judicial de este tipo de decisiones se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. *Otero v. Toyota.*, 163 D.P.R. 716 (2005); *Pacheco v. Estancias de Yauco*, 160 D.P.R. 409 (2003); *E.L.A. et als. v. Malavé*, 157 D.P.R. 586 (2002); *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263 (1999); *Franco v. Depto de Educación*, 148 D.P.R. 703, 709 (1999).

La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *E.L.A. v. P.M.C.*, 163 D.P.R. 478 (2004); *A.R.P.E. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones*, 124 D.P.R. 858 (1989); *Henríquez v. Consejo de Educación Superior*, 120 D. P.R. 194 (1989); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692 (1975). Ello, debido a que los tribunales deben dar deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. *Rivera Concepción v. A.R.P.E.*, 152 D.P.R. 116 (2000); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993); *Asoc. Drs. Med. Cui. Salud v. Morales*, 132 D.P.R. 567 (1993).

Al enfrentarse a una petición para revisar judicialmente una determinación administrativa, el tribunal analizará si conforme al expediente administrativo: (1) el remedio concedido fue razonable; (2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y (3) las conclusiones de derecho del organismo administrativo son correctas. *P.R.T.Co. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269 (2000); *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263 (1999); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656 (1997). *Véase*, Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Bogotá, Forum, 2001, págs. 533-536.

En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la sección 4.5 de la L.P.A.U., 3 L.P.R.A. sec. 2175. Dicha sección, establece que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." *Véase, Rebollo v. Yiyi Motors*, 161 D.P.R. 69 (2004); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70 (2000); *Domínguez v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387 (1999). El expediente administrativo constituirá la base exclusiva para la decisión de la agencia y para la revisión judicial de ésta. *Comisionado v. Prime Life*, 162 D.P.R. 334 (2004); *Torres v. Junta Ingenieros*, 161 D.P.R. 696 (2004).

El concepto de evidencia sustancial ha sido definido por la jurisprudencia como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Ramírez Rivera v. Depto. de Salud*, 147 D.P.R. 901 (1999); *Misión Ind. P.R. v. J. P.*, 146 D.P.R. 64 (1998); *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 687 (1953). Ello no requiere que a la luz de la prueba que obre en autos la decisión de la agencia refleje la única conclusión lógica a la que podría llegar un juzgador. Pero tampoco se considerará como correcta una determinación sostenida por un mero destello de evidencia. *Id.* El criterio rector en estos casos, será la razonabilidad de la determinación de la agencia luego de considerarse el expediente administrativo en su totalidad. *Id.*; *Otero v. Toyota, supra; Fuertes v. A.R.P.E.*, 134 D.P.R. 947 (1993). Por ende, la parte que impugna judicialmente las determinaciones de hechos de una agencia administrativa, tiene el peso de la prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que se llegó son irrazonables. *Ramírez Rivera v. Depto. de Salud, supra; Misión Ind. P.R. v. J.P., supra.*

Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe "otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial, en vista de la prueba presentada [...] y hasta el punto que se demuestre claramente que la decisión [de la agencia] no está justificada por una evaluación justa del peso de la prueba". *Metropolitan S.E. v. A.R.P.E.*, 138 D.P.R. 200, 213 (1995). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. *Ramírez v. Depto. de Salud, supra; Chase Manhattan v. Emmanuelli Bauzá*, 111 D.P.R. 708 (1981).

Conforme a lo dispuesto por ley, existe una práctica judicial claramente establecida de conceder gran consideración y deferencia a las decisiones de los foros administrativos. *Otero v. Toyota, supra; Rebollo v. Yiyi Motors, supra; Misión Ind. P.R. v. J.C.A.*, 145 D.P.R. 908 (1998). Dicha deferencia, emana del reconocimiento de que de ordinario las agencias administrativas están en mejor posición para hacer determinaciones de hechos al tratar con una materia sobre la cual tienen un conocimiento especializado. *Id*; *Véase, Metropolitana S.E. v. A. R.P.E.*, 138 D.P.R. 200 (1995); *Gallardo v. Clavell*, 131 D.P.R. 275 (1992). Más aún, cuando una determinación de una agencia esté sustentada por evidencia sustancial que obre en el expediente del caso, los tribunales deben abstenerse de sustituir el criterio de la agencia por el judicial. *Otero v. Toyota, supra; Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85 (1997).

No obstante, el que los tribunales den un alto grado de deferencia a los dictámenes de las agencias, no significa una abdicación de la función revisora del foro judicial. *Rivera Concepción v. A.R.P.E., supra; Del Rey v. J.A.C.L.*, 107 D.P.R. 348 (1978). Por el contrario, los tribunales tienen el deber de proteger a los ciudadanos contra posibles actuaciones *ultra vires*, inconstitucionales o arbitrarias de las agencias. Las determinaciones de los foros administrativos no gozan de deferencia cuando éstos actúan de manera arbitraria, ilegal, irrazonable, o ante la ausencia de prueba adecuada o cuando la agencia cometió error manifiesto en la apreciación de la misma. *Comisionado v. Prime Life, supra; Torres v. Junta Ingenieros, supra; O.E.G. v. Rodríguez*, 159 D.P.R. 98 (2003).

Ahora bien, según lo dispone la mencionada Sección 4.5 de la L.P.A.U., "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal." El razonamiento detrás de esta disposición, es que los tribunales gozan de peritaje en cuanto a las cuestiones legales por lo cual no se adelanta ningún fin público dándole deferencia a la agencia en cuanto a este aspecto. *San Antonio Maritime v. P.R. Cement Co.,* 153 D.P.R. 374 (2001); *Miranda v. C.E.E.,* 141 D.P.R. 775 (1996).

Sin embargo, lo anterior no quiere decir que los tribunales deben descartar livianamente las conclusiones de derecho hechas por las agencias administrativas. La jurisprudencia interpretativa del Tribunal Supremo tiende a señalar que los tribunales deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que éstas administran. Ello, debido a que por tratarse de áreas del derecho que manejan a diario, las agencias desarrollan un conocimiento especializado al respecto que no debe ser menospreciado. *Asoc. Vec. H. San Jorge v. U. Med. Corp., supra; Rivera Rentas v. A & C Development,* 144 D.P.R. 450 (1997).

El criterio de revisión en cuanto a las interpretaciones legales hechas sobre los estatutos que maneja la agencia debe ser también uno de razonabilidad. Aún así, la deferencia que merecen estas interpretaciones legales, cede ante una actuación irrazonable o ilegal que justifique que el tribunal ejerza su función revisora en protección de la ciudadanía. *Pacheco v. Estancias de Yauco, supra. Véase, Adorno Quiles v. Hernández,* 126 D.P.R. 191 (1990).

No obstante, en cuanto a las conclusiones de derecho que no envuelven interpretaciones de las leyes y reglamentos que administra la agencia cuya decisión es impugnada ni dentro del área de especialidad de ésta, las mismas son revisables por los tribunales sin limitaciones. *Misión Ind. P.R. v. J.P., supra; Rivera Rentas v. A & C Development, supra.*

## B

Es norma reiterada que el debido proceso de ley cuenta con dos vertientes: la sustantiva y la procesal. *Rodríguez Rodríguez v. E.L.A.,* 130 D.P.R. 562 (1992). La dimensión sustantiva del debido proceso de ley, persigue salvaguardar los derechos fundamentales de la persona. En su vertiente procesal, el aludido precepto le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que en esencia sea justo, equitativo y de respeto a los individuos afectados. *Rodríguez Rodríguez v. E.L.A., supra; López Vives v. Policía de Puerto Rico,* 118 D.P.R. 219 (1987).

Para cumplir con el debido proceso de ley, en su dimensión procesal, la jurisprudencia ha establecido varios requisitos. Los mismos deben ser satisfechos en todo procedimiento de índole adversativo, son éstos a saber: (a) notificación adecuada del proceso; (b) proceso ante un juzgador imparcial; (c) oportunidad de ser oído; (d) derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (e) tener asistencia de abogado, y (f) que la decisión se base en el expediente del caso. *López Santos v. Asociación de Taxis de Cayey,* 142 D.P.R. 109 (1996); *Feliciano Figueroa v. Toste Piñero,* 134 D.P.R. 909 (1993).

En lo que respecta al debido proceso de ley en el ámbito administrativo, la L.P.A.U. establece en la sección 3.13 (b) que:

"El funcionario que presida la vista dentro de un marco de relativa informalidad ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación, excepto según haya sido restringida o limitada por las estipulaciones en la conferencia con antelación a la vista."

Por otro lado, el profesor Demetrio Fernández Quiñones ha señalado que:

"El requisito de ser oído implica el haber sido notificado de la violación que se imputa. Es imprescindible que se le conceda al querellado una oportunidad razonable para contestar y prepararse para su defensa. Su defensa incluye el que se le permita presentar evidencia oral y documental, así como conocer la de su adversario y contrainterrogar a los testigos de la otra parte." [5]

Finalmente, en el ámbito del derecho administrativo, aunque el debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal, sí se requiere un proceso justo y equitativo que respete la dignidad de los individuos afectados. *Torres v. Junta Ingenieros*, 161 D.P.R. 696 (2004); *López Santos v. Asoc. de Taxis de Cayey, supra; López Vives v. Policía de Puerto Rico, supra,* "[...]Después de todo, el debido proceso de ley encarna la esencia de nuestro sistema de justicia. Su prédica comprende los elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado [...]." *López Santos v. Asoc. de Taxis de Cayey, supra. Véase además, Marrero Caratini v. Rodríguez Rodríguez,* 138 D.P.R. 215 (1995).

En cuanto a los procedimientos para la concesión de licencias, franquicias, permisos y acciones similares las secciones 5.1 a 5.3 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. secs. 5181 a 5183, facultan a las agencias que tienen la delegación legislativa de emitir este tipo de acreditación gubernamental para que promulguen un reglamento que establezca un procedimiento rápido y eficiente para la expedición de licencias, franquicias, permisos, endosos y cualquier otra gestión similar.

Toda persona a quien se le haya negado una licencia, tendrá derecho a impugnar la determinación de la agencia por medio de un procedimiento adjudicativo, según se establezca en la ley especial de que se trate y en las secs. 2151 a 2168 de la Ley de Procedimiento Administrativo Uniforme. 3 L.P.R.A. sec. 2184.

## C

Por otro lado, la Ley Núm. 404 de 11 de septiembre de 2000, Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 455 a 460k, fue aprobada con el propósito principal de lograr una solución efectiva al problema del control de armas de fuego en manos de delincuentes en Puerto Rico, el cual, según dispuso expresamente el legislador, constituye una vertiente directa de la actividad criminal. La posesión, así como la portación de armas, no deriva derechos, sino que se trata de privilegios controlados por el Estado. *Cancio, Ex parte,* 161 D.P.R. 479 (2004); *Rivera Pagán v. Superintendente de la Policía,* 135 D.P.R. 789 (1994).

La Exposición de Motivos de la referida ley dice lo siguiente:

"Mediante la aprobación de esta Ley, el Estado ejercita su poder inherente de reglamentación, con el fin de promover una mayor seguridad y bienestar público para el Pueblo de Puerto Rico."

En lo atinente a los requisitos para solicitar un permiso de portación de armas, el Artículo 2.02 de la Ley de Armas de Puerto Rico establece, en lo aquí pertinente, que:

"(a) El Superintendente expedirá una licencia de armas a cualquier peticionario que cumpla con los siguientes requisitos:

[...]

(2) Tener un certificado negativo de antecedentes penales expedido no más de treinta (30) días previo a la fecha de la solicitud y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en la sec. 456j de este título o sus equivalentes, tanto en Puerto Rico, los Estados Unidos o el extranjero.

(3) No ser ebrio habitual o adicto a sustancias controladas.

[...]

(7) No estar bajo una orden del tribunal que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, alguno de los niños de ese compañero o a persona alguna, y no tener un historial de violencia.

[...]

(b) Toda solicitud, en duplicado y debidamente cumplimentada, junto a los documentos y el comprobante arriba indicados, se radicarán en el cuartel general de la Policía o en las comandancias de[l] área donde resida el peticionario, reteniendo éste la copia sellada para su constancia. Dentro de un término de cinco (5) días laborables, el Superintendente expedirá una certificación de que la solicitud y todos los documentos requeridos han sido entregados, o requerirá la cumplimentación de los requisitos de la solicitud para poder emitir la certificación. A partir de que se expida la mencionada certificación, el Superintendente, dentro de un término que no excederá de ciento veinte (120) días naturales, determinará y certificará por escrito si el peticionario cumple con los requisitos establecidos en este capítulo para la concesión de la licencia de armas. Este podrá lograrse mediante una investigación en los archivos de cualquier agencia gubernamental de Puerto Rico, Estados Unidos o el exterior a la que pueda tener acceso (incluyendo los archivos del *National Crime Information Center* y del *National Instant Criminal Background Check System*, entre otros). De resultar la investigación del Superintendente en una determinación de que la persona no cumple con todos los requisitos establecidos en este capítulo, no le será concedida la licencia de armas, pero sin menoscabo a que el peticionario pueda solicitarla nuevamente en un futuro. [...]

(c) El Superintendente podrá, discrecionalmente y de forma pasiva, sin perturbar la paz y tranquilidad del investigado o interrumpir la privacidad del hogar, realizar cuantas investigaciones estime pertinentes después de remitirse la licencia al peticionario. Disponiéndose que el hecho de que se estén haciendo o no se hayan hecho las investigaciones no podrá ser impedimento para que se remita la licencia dentro de los términos antes indicados. Si después de realizada la investigación pertinente por el Superintendente resultare que el peticionario ha dado información falsa a sabiendas en su solicitud o no cumple con los requisitos establecidos en este capítulo, se procederá de inmediato a la revocación e incautación de la licencia y a la incautación de todas las armas de fuego y municiones que tuviera el peticionario, quedando éste sujeto a ser procesado por el delito de perjurio y por las correspondientes violaciones a este capítulo."

25 L.P.R.A sec. 456a

Por su parte, el Artículo 2.11 de Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 456j, dispone que:

"El Superintendente no expedirá licencia de armas ni el Secretario del Departamento de Hacienda expedirá licencia de armero, o de haberse expedido se revocarán y el Superintendente se incautará de la licencia y de las armas y municiones de cualquier persona que haya sido convicta, en o fuera de Puerto Rico, de cualquier delito grave o su tentativa, por conducta constitutiva de violencia doméstica según tipificada en las secs. 601 et seq. del Título 8, por conducta constitutiva de acecho según tipificada en las secs. 4013 a 4026 del Título 33, ni por conducta constitutiva de maltrato de menores según tipificada en la Ley de Diciembre 16, 1999, Núm. 342. Disponiéndose, además, que tampoco se expedirá licencia alguna a una persona con un padecimiento mental que lo incapacite para poseer un arma, un ebrio habitual o adicto al uso de narcóticos o drogas [...]".

La Ley de Armas de Puerto Rico somete a nuestra jurisdicción la revisión de las determinaciones que haga el Superintendente de la Policía al amparo de sus disposiciones. Artículo 7.08, 25 L.P.R.A. sec. 460g.

Para administrar las facultades concedidas por la Ley de Armas de Puerto Rico, el Superintendente adoptó el Reglamento de la Ley Núm. 404 de 11 de septiembre de 2000, según enmendada, conocida como la Ley de

Armas de Puerto Rico, Reglamento Núm. 7311 de 16 de enero de 2007.

El Artículo 9 del Reglamento Núm. 7311 establece el procedimiento para expedir las licencias de armas:

"A. El Superintendente, dentro de un término que no excederá de ciento veinte (120) días naturales, determinará y certificará por escrito si el peticionario cumple con los requisitos establecidos en esta ley para la concesión de la licencia de armas. Para esto:

1. Verificará en sus archivos y en los archivos del *National Crime Information Center* (NCIC) y del *National Instant Criminal Background Check System*, (NICBCS) entre otros).

a. Correrá el cartón de huellas dactilares contra la base de datos del sistema computadorizado de huellas (AFIS).

b. De resultar la investigación del Superintendente en una determinación de que la persona no cumple con todos los requisitos establecidos en esta Ley, no le será concedida la licencia de armas, notificando por escrito su decisión y orientándole del derecho a apelar tal decisión. El proceso de apelación se regirá por lo establecido en la ley 170 "Ley de Procedimiento administrativo Uniforme".

[...]

e. El Superintendente tendrá discreción de realizar una investigación de campo al peticionario antes de concederle la licencia de armas. Además, luego de concedérsele ésta a la persona, el Superintendente podrá realizar una investigación al mismo en cualquier momento. Disponiéndose que en caso que la investigación arroje que el peticionario está haciendo un uso indebido o ilegal del arma, el Superintendente tendrá plena facultad de eliminar el privilegio de la licencia de armas. La persona podrá solicitar revisión de tal decisión, siguiendo los procedimientos establecidos en la LPAU. Disponiéndose que por uso ilegal o indebido se entenderá no sólo aquella acciones que violenten las normas establecidas en la Ley de Armas, supra, sino aquellas que el Superintendente entienda, atentan contra la seguridad pública."

Por otro lado, el Artículo 11 del Reglamento Núm. 7311 gobierna el proceso de investigaciones para expedir las licencias de armas:

"A. El Superintendente realizará cuántas investigaciones estime pertinentes después de remitirse la licencia al peticionario.

B. Las investigaciones las realizará la División de Investigaciones de Armas la cual está adscrita al Negociado de Licencias y Permisos.

1. Al recibir la petición para investigar esta División, las enumerará por orden de fecha de radicación y Comandancia y en ese orden se asignarán a investigar por áreas.

2. Llevará un libro control de cada solicitud que reciba para investigar.

3. Al recibir el expediente con la investigación realizada, el director de la División o la persona que él designe hará un análisis objetivo del expediente que le someta el investigador para determinar si la investigación y el resto del contenido del expediente cumple con las leyes y con las normas establecidas por la Policía.

4. Una vez revisado el expediente, certificará el mismo como Favorable o Desfavorable en el formulario

PPR-55 "Certificación sobre Expediente de Investigación de Solicitud de Licencias de Armas" y remitirá el mismo a la División de Registro de Armas.

5. Si la investigación resultare desfavorable, se revocará y ocupará de inmediato tanto la licencia como todas las armas y municiones que tuviere el peticionario. El Superintendente notificará por escrito esta determinación y apercibirá al ciudadano de su derecho a solicitar vista administrativa.

6. Este mismo procedimiento se seguirá en caso de cualquier investigación de armas solicitada."

De manera supletoria al Reglamento Núm. 7311, el Superintendente de la Policía adoptó el Reglamento para la celebración de vistas administrativas sobre licencias de tener y poseer armas de fuego, tiro al blanco, explosivos, detectives privados, y portación como funcionario público, Reglamento Núm. 6244 de 19 de diciembre de 2000. Éste establece los mecanismos y normas procesales que regirán lo concerniente a la función adjudicativa del Superintendente de la Policía para expedir, renovar, revocar, cancelar o denegar licencias de tiro al blanco; licencias y permisos de explosivos; licencias de escuelas y agencias de detectives privados y de detective privado; y licencias de portar armas de fuego como funcionarios públicos.

En lo referente a la presentación de prueba durante las vistas administrativas, el Reglamento Núm. 6244 dispone que las Reglas de Evidencia no aplican en los procedimientos administrativos, sin perjuicio de que los principios rectores que informan las mismas puedan utilizarse en la obtención de una adjudicación justa, rápida y económica. Además, se permite a la parte peticionaria presentar prueba para refutar la evidencia con la cual la Policía fundamenta su determinación. Artículos 18 y 19. Reglamento Núm. 6244 de 19 de diciembre de 2000.

### III

En el recurso de autos, el Sr. Otero Ríos esencialmente plantea que la Policía incidió al revocarle su licencia de armas sin haber presentado testigos que tuvieran conocimiento personal de los hechos que se le imputan. Alega que no tuvo la oportunidad de contrainterrogar a las personas que hicieron declaraciones en su contra durante la investigación realizada por la División de Expedición de Licencias y Permisos de Seguridad Privada de la Policía y que fue adoptada por la División de Registro de Armas. También alega que la analista de la División de Registro de Armas que evaluó su caso no corroboró la información que presentó el investigador lo que constituye una violación al debido proceso de ley. No le asiste la razón.

Según surge del expediente, en el caso de epígrafe, la Policía utilizó el procedimiento vigente para atender la renovación de la licencia de armas del Sr. Otero Ríos. De acuerdo con éste, el recurrente no tiene derecho a contrainterrogar a las personas que declararon durante la investigación de la Policía. El Sr. Otero Ríos tuvo acceso al expediente administrativo y pudo presentar prueba que refutara el testimonio de los declarantes. Igualmente pudo presentar testigos que declararan durante la vista administrativa que refutaran estas declaraciones, pero no lo hizo.

Durante la vista, el abogado del Sr. Otero Ríos trató de impugnar el testimonio de la Sra. María Rivera Quiñones (Sra. Rivera Quiñones), Analista de la División de Registro de Armas, que trabajó con el caso del recurrente, porque ella no fue la que realizó la investigación, ni tiene conocimiento personal de las declaraciones que constan en el expediente. No obstante, tanto el Oficial Examinador como la Sra. Rivera Quiñones explicaron en la vista que éste es el procedimiento usual para la revocación de armas.

La Sra. Rivera Quiñones señaló que su trabajo consiste en analizar los informes sometidos por el agente investigador y hacer la recomendación correspondiente al Supervisor de la División de Registro de Armas. Una vez el Supervisor recibe la recomendación, la refiere a la atención del Superintendente Auxiliar de Drogas, Narcóticos y Armas Ilegales. La información sometida por el investigador no se vuelve a corroborar porque se trata de un mismo trámite administrativo; además, las entrevistas son registradas en un formulario que contiene

toda la información personal de los declarantes y su disposición de servir como testigos ante los tribunales. También se incluye una declaración escrita por los propios declarantes.

Antes de la celebración de la vista administrativa, la Policía obtuvo una copia de una orden de protección al amparo de la Ley contra el Acecho emitida el 12 de julio de 2007 por el TPI, Sala Municipal de Toa Baja, en contra del Sr. Otero Ríos. En esta orden, el TPI incluyó las siguientes determinaciones de hechos:

"Las partes han tenido varios problemas de comunicación, actitudes, insultos y amenazas. **En el Tribunal tuvieron otro altercado más, todos temen por su seguridad**. Los peticionarios son parte de la Administración o Junta de Residentes y el querellado es dueño de la compañía que brindaba seguridad en la Urb. El Plantío en Toa Baja."

Apéndice de la recurrida, p.13. (Destacado por nosotros).

Esta orden consta en el expediente administrativo y goza de una presunción de corrección. Por sí sola, ésta provee una razón objetiva y razonable para la revocación de la licencia de armas del Sr. Otero Ríos.

Por otro lado, existe en el expediente administrativo evidencia sustancial que justifica la actuación de la Policía de revocar la licencia de armas del Sr. Otero Ríos. [6] Veamos algunos fragmentos de las declaraciones que obran en el expediente:

"Delante de su esposa me tocó las nalgas, día en que me pagó de menos por supuestamente haber robado el *petty* [sic] de $61.42. Reclamé para nada. Además, el Sr. Iván Otero utiliza sus armas para intimidar a sus empleados, [lleva] una en el tobillo, una en la espalda y una en el escritorio, cuando está en el carro la pone al lado de su asiento. [...] El Sr. Iván Otero les dice a los guardianes que los primeros tres meses no saca seguro social y luego que tengan permanencia se los empieza sacar el SS e Inc. Tax. [...] Perdieron varios puestos por agresión al cliente; en una ocasión le dijeron al cliente de los Colobos que se metieran el puesto por el culo. Perdieron el puesto y le hechó [sic] la culpa a los guardianes por su supuesto mal trabajo. [...] Votó a los guardianes y sólo recuperó [sic] a dos de ellos para otro puesto. Esto fue bajo una borrachera. [...] Fui hostigada y perseguida por el equipo entero mandada por el Sr. I. Otero en mi residencia y con patrulla de la compañía por [sic] el mes de diciembre días antes de haberme votado [sic] [...]".

Apéndice de la recurrida, pp. 7-9.

"El Sr. Iván Otero no está apto ni capacitado para llevar de manera eficiente una compañía de seguridad. Él mismo a la hora de entrar [el] personal a la oficina cuando se va a exponer alguna situación saca su arma, la pone en el escritorio, amenaza a los oficiales, a mí me amenazó con hacerme una querella federal y que me estaba investigando diciéndome que la venganza es dulce ya que yo fui al Departamento del Trabajo federal y estatal, [...] luego me gritó a mi y a mi compañera que estábamos con miedo. El Sr. Iván Otero es una persona que utiliza la intimidación con amenazas y mentiras [...] El mismo se la pasa bajo los efectos del alcohol y siempre en la oficina tomando cerveza en un vaso con hielo. También suele [...] decir [...] que es intocable debido a sus coneciones [sic] con agentes policiales, entre otros [...]"

Apéndice de la recurrida, p. 11.

"Para el mes de agosto, primera semana, el Sr. Otero, vía radio, formó una fuerte garata con el supervisor Richard González al cual insultó estando [sic] en estado de embriaguez porque hubo problemas en el puesto de los Colobos Park [...] Cuando fui a la oficina para que me dieran la liquidación, me rebajaron tres meses de SS y inctax [sic] lo cual le indico que no hay problemas, pero que tenía que pagarme 20 horas que se me debían desde noviembre y el bono acumulado y solamente me indicó que no las iba a pagar y que hiciera lo que yo

quiciera [sic] y baya [sic] donde tu [sic] quieras que yo tengo conicciones [sic] en la policía y no me va a pasar nada [...]".

Apéndice de la recurrida, p.13.

"El Sr. Iván Otero, el día en que me contrató, se encontraba tomando bebidas alcohólicas y en las siguientes tres veces que fui a su oficina el mismo sostuvo la misma conducta de ingerir cerveza dentro de la oficina frente a sus empleados [...] El mismo repetidas veces sacó sus armas de reglamento de manera intimidante y colocándolas ensima [sic] o sobre su escritorio, esto en momentos de entrega de renuncia y cobro de dinero. También hizo lo mismo en el momento en que fui junto a mi esposa a cobrar, nos trato de manera burlona y amenazante."

Apéndice de la recurrida, p. 15

"Yo me encontraba en la oficina porque no pude cambiar el cheque. [...] Cuando llega el Sr. Otero me pasa por el lado llega hasta su escritorio y me dice estas palabras, tú eres una cabrona y una puta, me mamas el bicho y me comes el culo; yo le contesté que eso se lo haría otra persona. Diciéndomelo [sic] en un tono intimidante, con palabras soeces, con revólver a la vista de todo y hebrio [sic] al frente de tres menores junto a mis ex compañeros de trabajo Edgard Bayron, Ángel Figueroa y su esposa [...] El Sr. [Otero] me dice, yo no te tengo miedo, me puedes llevar al Departamento del Trabajo, no te tengo miedo [...] a ti yo te pago cuando me de la gana y tengo hasta dos años para pagarte [,] le contesté estás bien equivocado y es cuando me dice salte de mi oficina, puñetea, [dice] voy a llamar a la Policía [...] cuando mis compañeros me sacaran de la puerta hacia mi auto él cierra la oficina y se de [sic] él un fuerte holor [sic] a alcohol. [...] procedí llamar a la policía, ya que el caballero nunca llamó, llegando [sic] así al lugar a la 6:30 PM. El Sgto. Ángel L. Ocasio placa 8-8783 preguntó la situación de lo ocurrido. La querella fue hecha [...] En varias veces que fui a la oficina el Sr. Otero siempre a [sic] tenido encima del escritorio el arma de fuego y a la vista de todo el que entra en la oficina. También en horas laborables se pasa tomado bebidas embriagantes y yo doy fe de eso porque lo e [sic] visto y la Sra. Ada Ramos mi compañera también [...] Todavía es la hora que no se me ha pagado la liquidación, ni se me ha entregado la W-2 para radicar planilla y hoy es 16 de marzo de 2007."

Apéndice de la recurrida, p.13.

La actuación del Superintendente de la Policía no fue una caprichosa o arbitraria; al contrario, es absolutamente razonable de acuerdo con la evidencia que obra en el expediente del Sr. Otero Ríos y cumple con la obligación ministerial de la Policía de proteger a las personas y a la propiedad, mantener y conservar el orden público, observar y procurar la más absoluta protección de los derechos civiles del ciudadano.

Si bien durante la vista administrativa pudo haber habido un desvío procesal, ya que la mejor práctica hubiera sido presentar como testigo al Agte. Torres Martínez, quien realizó la investigación y entrevistó a los declarantes, la otra evidencia que obra en el expediente hace palidecer las alegaciones del recurrente de que hubo una violación al debido proceso de ley al no poder confrontar las personas entrevistadas por el aludido agente.

Además, el Sr. Otero Ríos tenía el peso de la prueba de refutar las imputaciones contenidas en el informe del agente investigador. No obstante, no presentó evidencia alguna de refutación, ni de reputación que contradijera las declaraciones de las diez personas entrevistadas por la Policía en el proceso de investigación.

Tras un análisis del balance de interés, nuestra función revisora de las determinaciones del Superintendente de la Policía sobre la concesión de licencias para manejar, poseer o portar armas de fuego es de carácter limitado, máxime, cuando se le ha delegado la implantación de una política pública de particular interés social:

el control de las armas de fuego en manos privadas por su repercusión sobre la actividad criminal en Puerto Rico.

De acuerdo con estos objetivos, debemos limitarnos a evaluar si la revocación de la licencia de armas del recurrente fue una actuación arbitraria o ilegal, o fue hecha de una manera tan irrazonable que constituyó un abuso de discreción. El interés de proteger la sociedad del uso irresponsable de las armas de fuego debe prevalecer sobre el interés individual del Sr. Otero Ríos de continuar poseyendo una licencia de armas. Según se desprende del expediente, las actuaciones del recurrente le impiden disfrutar de este privilegio.

Por último, el Sr. Otero Ríos alega que según lo resuelto por el Tribunal Supremo de los Estados Unidos en *District of Columbia v. Heller,* 554 U.S. ___ (2008), 128 S. Ct. 2783, y en virtud de la Enmienda Segunda de la Constitución de los Estados Unidos, existe un derecho individual a poseer y portar armas de fuego, aunque el Estado puede imponer ciertas limitaciones a este derecho. El Tribunal Supremo dispuso que pueden existir prohibiciones a personas convictas por delito grave, incapacidades mentales, prohibición de portar armas en las escuelas o edificios públicos, así como otras condiciones generales necesarias para identificar a los dueños de las armas de fuego. No obstante, la Enmienda Segunda de la Constitución de los Estados Unidos no aplica *ex proprio vigore* al Estado Libre Asociado de Puerto Rico.

En virtud de la doctrina de los casos insulares, adoptada por una pluralidad del Tribunal Supremo de Estados Unidos en *Downes v. Bidwell,* 182 U.S. 221 (1901); y luego adoptada unánimemente en *Balzac v. People of Puerto Rico,* 258 U.S. 298 (1922), Puerto Rico es un territorio no incorporado a los Estados Unidos, [7] a pesar de que a Puerto Rico no se le considera un territorio extranjero a los fines de la aplicación de la Constitución de Estados Unidos. Según la doctrina de los casos insulares y de acuerdo con lo dispuesto por el estatuto de Relaciones Federales con Puerto Rico, 64 Stat 319, Puerto Rico se considera como un territorio que pertenece a, pero no forma parte de dicha Nación en el sentido doméstico.

Basándose en esta doctrina y lo dispuesto por el estatuto de Relaciones Federales con Puerto Rico, el Tribunal Supremo de Estados Unidos se ha negado reiteradamente a reconocer la aplicabilidad a Puerto Rico *ex proprio vigore* de toda cláusula de la Constitución que se refiera a los estados o a la Nación como tal. Así por ejemplo, en *Calero Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663 (1974), y en *Examining Board v. Flores de Otero,* 426 U.S. 572 (1976), el Tribunal Supremo decidió que la Enmienda Catorce de la Constitución de los Estados Unidos que extiende las garantías a un debido proceso de ley y a la igual protección de las leyes a los estados no aplica al Estado Libre Asociado de Puerto Rico por éste no ser un estado. Concluyó que los derechos a un debido proceso de ley y a la igual protección de las leyes que la Constitución de Estados Unidos les garantiza a todas las personas frente al gobierno federal y al gobierno de los estados son derechos fundamentales. Así pues, estos derechos por ser fundamentales, protegen a las personas frente al Estado Libre Asociado al amparo de las Enmiendas Quinta o Catorce de la Constitución de Estados Unidos. El Tribunal Supremo de Estados Unidos no señaló en virtud de cuál de estas cláusulas constitucionales es que aplican tales derechos en Puerto Rico.

Luego, en *Califano v. Torres,* 435 U.S. 1 (1978), y en *Harris v. Rosario,* 446 U.S. 651 (1980), el Tribunal Supremo de Estados Unidos reiteró la doctrina de los casos insulares adoptada en *Balzac,* y resolvió que siendo el Estado Libre Asociado de Puerto Rico un territorio no incorporado a Estados Unidos, la Constitución no requiere que al aprobar programas de bienestar social el Congreso le confiera a las personas y ciudadanos que residen en Puerto Rico el mismo trato que reciben las personas y ciudadanos residentes en los estados y los territorios incorporados a la Nación. Asimismo, conforme a la doctrina de los casos insulares, en *Puerto Rico v. Branstad,* 483 U.S. 219 (1987), el Tribunal Supremo de Estados Unidos se negó a resolver que la Cláusula de la Extradición, Artículo IV sec. 2 de la Constitución, aplica al Estado Libre Asociado, por éste no ser un estado. El Tribunal Supremo resolvió el caso al amparo de la Ley Federal de Extradición que expresamente dispone que su aplicación se extiende a todos los territorios de los Estados Unidos, independientemente de si están o no

incorporados a Estados Unidos.

Acorde con todo lo anterior, determinamos que el recurrente no logró rebatir la presunción de corrección que cobija la Resolución recurrida. Por ende, le debemos deferencia.

## IV

Por los fundamentos expuestos, se confirma la Resolución emitida por la Policía de Puerto Rico el 7 de julio de 2007 y notificada al día siguiente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2009 DTA 86

**1.** Apéndice del recurrente, Exhibit III.

**2.** Apéndice del recurrente, Exhibit IV.

**3.** Apéndice del recurrente, Exhibit I.

**4.** Apéndice del recurrente, anejo VIII.

**5.** Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. ed., Bogotá, Forum, 2001, pág. 366.

**6.** En el alegato de oposición de la Procuradora General se hace un resumen de cada una de las declaraciones. pp. 3-4.

**7.** We are therefore of opinion that the island of Porto Rico is a territory appurtenant and belonging to the United States, but not a part of the United States… The result of what has been said is that while in an international sense Porto Rico was not a foreign country, since it was subject to the sovereignty of and was owned by the United States, it was foreign to the United States in a domestic sense, because the island had not been incorporated into the United States, but was merely appurtenant thereto as a possession [...]. *Downes v. Bidwell*, 182 U.S. 244, 287, 342 (1901).